UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:19-CV-00042-TBR-LLK

LAURA DRUMMOND                                                                                    PLAINTIFF

v.

MURRAY-CALLOWAY COUNTY
PUBLIC HOSPITAL CORPORATION                                                         DEFENDANT

## OPINION & ORDER

Senior Judge Thomas B. Russell referred this matter to U.S. Magistrate Judge Lanny King for ruling on all discovery motions. [DN 9].

This matter is now before the Court on Plaintiff's Motion to Quash, which seeks to quash two third-party subpoenas that Defendant Murray-Calloway County Public Hospital Corporation's ("MCCPH") issued to Plaintiff's subsequent employers for Plaintiff's employment records. [DN 17]. MCCPH responded, [DN 18], and Plaintiff filed her Reply, [DN 19]. This matter is now ripe for adjudication.

For the reasons set forth below, Plaintiff's Motion to Quash is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

This matter arises from an employment dispute between Plaintiff and MCCPH, where Plaintiff alleges violations of the Family and Medical Leave Act ("FMLA"), the Kentucky Civil Rights Act, and the Kentucky Wage and Hour Law. [DN 1-1].

Plaintiff began working at MCCPH around September 2010. *Id.* In 2017, she began requesting intermittent FMLA leave to undergo and recover from cancer treatment. *Id.* at 8. Plaintiff then worked intermittently until her position was eliminated on July 19, 2018. *Id.* at 10.

1

Plaintiff claims throughout the time she was receiving cancer treatment MCCPH violated the FMLA in a variety of ways, including: requiring Plaintiff to return to work before her FMLA leave expired; denying her FMLA leave; discouraging her from taking such leave; and, ultimately, terminating her position once she complained about the alleged FMLA violations. *Id.* at 10-11.

Plaintiff also claims that MCCPH violated the Kentucky Civil Rights act when it failed to accommodate her medical condition. *Id.* at 11-12. Plaintiff alleges that her doctor restricted her to working no more than eight hours per day. *Id.* at 9. Despite being informed of that restriction, Plaintiff claims that MCCPH routinely required her to work beyond that restriction. *Id.* at 9.

Finally, Plaintiff alleges that MCCPH violated the Kentucky Wage and Hour Law when it required her to work through her lunch break, but failed to pay her for that time. *Id.*

As a result of these claims, Plaintiff "seeks damages including lost wages from the time of her termination through the date of trial, as well as reinstatement to her position with" MCCPH. [DN 17-1 at 58]. Of relevance to this instant motion is Plaintiff's claim for lost wages and her mitigation efforts.

In written discovery, Plaintiff identified two companies with whom she was employed after her position with MCCPH was eliminated, Fast Pace Medical and Primary Care. [DN 18]. Plaintiff worked at Fast Pace Medical as an LPN from November 5, 2018, until she was terminated on October 31, 2019, for "not meeting company goals." [DN 18-2 at 93]. Plaintiff then began working for her current employer, Primary Care, as an LPN on January 27, 2020. *Id.*

On February 18, 2020, MCCPH served notice that it intended to issue subpoenas duces tecum to Fast Pace Medical and Primary Care seeking the following documents:

> All employment records and information created, received, or maintained on [Plaintiff] whether in hard copy or electronic form, including, but not limited to Ms. Drummond's application for employment, the dates of her employment, her complete personnel file, work schedule, time cards, performance evaluations,

> worker's compensation records, payroll history, job description and duties, rate of pay, resume, manager files, benefit information, W2s or 1099s, disciplinary record and any other employment records which exist. [DN 17-1 at 58, DN 17-2]

Plaintiff objected to the subpoenas in their entirety, contending they were unnecessary because the records' only relevance would be to the extent they go to Plaintiff's mitigation of damages and mitigation could already be determined from the W-2s and 1099s Plaintiff produced. [DN 18-3]. MCCPH asserted that the requested records were all necessary to fully evaluate whether Plaintiff mitigated her damages. [DN 18-4].

On March 10, 2020, the Court conducted a telephonic status conference. [DN 16]. There, the parties were ordered to meet and confer to attempt in good faith to narrow the scope of this discovery dispute. *Id.* If a dispute still existed following that meeting, Plaintiff was granted leave to file a motion to quash the subpoenas at issue. *Id.*

> After that status conference, MCCPH agreed to narrow the scope of records sought to:
>
> Application(s) for employment, resume tendered, offer letter, dates of employment, employment position(s) held, job descriptions for position(s) held, work schedule and Full Time Equivalent status, hours worked and compensation by payroll period, benefit enrollment form(s), summary plan descriptions for benefit plans in which she was eligible to participate, employee costs of participating in benefit plans in which she was eligible to participate, change of status confirmations (including termination of employment if applicable), disciplinary records (including employment termination if applicable), leave(s) of absence applied for and action(s) taken in response, any work-related injury or illness reported, IRS form(s) W2 or 1099, and any key or other summary of payroll codes necessary to interpret entries, not otherwise evident, appearing within records pertaining to hours of work and payroll. [DN 17-3 at 70].

Plaintiff maintained her objections, arguing that the subpoenas should not request: work scheduled and Full Time Equivalent status, change of status confirmations, disciplinary records, leaves of absence requested and responses thereto, and any work-related injuries or illnesses reported. *Id.* at 69. MCCPH refused, arguing that information is all relevant to the mitigation analysis. *Id.* at 68.

Plaintiff's instant Motion to Quash then followed. *Id.* at 68. Therein, Plaintiff returns to her initial position that the subpoenas in their entirety are improper and should be quashed. [DN 17]. As set forth below, this Court disagrees.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed.R.Civ.P. 26(b)(1). In evaluating this, the Court considers several factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

"[T]he scope of discovery under a subpoena is the same as the scope of discovery under Federal Rule of Civil Procedure 26." *King v. Harwood*, 2018 WL 547579 at *4 (W.D. Ky. Jan. 24, 2018) (citing *Certain Underwriters at Lloyd's, London Subscribing to Policy No. NAC050614-1-NTL5-150226-4 v. Morrow*, 2017 WL 4532240 at *3 (W.D. Ky. Oct. 10, 2017) (internal citations omitted).

Protection from subpoenas can be provided in certain circumstances provided in Rule 45 of the Federal Rules of Civil Procedure. For example, courts must quash or modify subpoenas that "subject a person to undue burden," Fed.R.Civ.P. 45(c)(3)(A)(iv). With such motions, "[t]he movant bears the burden of establishing that the issued subpoenas violate Rule 45." *Cleveland Clinic Health Sys.-East Region v. Innovative Placements, Inc.*, 2012 WL 187979 at *2 (N.D. Ohio Jan. 23, 2012) (quoting *Recycled Paper Greetings, Inc. v. Davis*, 2008 WL 440458, at *3 (N.D. Ohio Feb. 13, 2008)).

"Protection from subpoenas under Rule 45 'tracks the provisions of Rule 26(c)' which provides for the issuance of protective orders." *Anderson v. Old Nat. Bancorp.*, 2010 WL 5463397 at *2 (W.D. Ky. Dec. 29, 2010) (quoting *Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc.,* 2005 WL 2045818 at *2 (W.D. Mich. Aug. 24, 2005) (internal quotations omitted)). Here, the Court must balance several factors: " '(1) relevance, (2) need, (3) confidentiality, and (4) harm.' " *Id.* at *2 (quoting *Spartanburg Reg'l Healthcare Sys.*, 2005 WL at *2).

Put another way, the Court must balance "whether (i) the subpoena was issued primarily for purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) the information sought is relevant, nonprivileged, and crucial to the moving party's case." *Cleveland Clinic Health Sys.-East Region v. Innovative Placements, Inc.*, 2012 WL 187979 at *2 (N.D. Ohio Jan. 23, 2012) (quoting *Recycled Paper Greetings, Inc. v. Davis*, 2008 WL 440458 at *3 (N.D. Ohio Feb.13, 2008) (internal citation marks omitted). "If the documents sought by the subpoena are relevant and are sought for good cause, then the subpoena should be enforced unless the documents are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing." *Id*. (quoting *Davis*, 2008 WL 440458 at *3 (N.D. Ohio Feb. 13, 2008)).

## DISCUSSION

Plaintiff's Motion to Quash argues that MCCPH's subpoenas to Plaintiff's subsequent employers seek documents that are irrelevant and outside the scope of discovery and that the request for such records constitutes a fishing expedition intended to harass Plaintiff. MCCPH argues that the documents sought are necessary to determine the degree to which Plaintiff mitigated her alleged lost wages damages. As discussed below, the Court finds that the documents sought are relevant, except for disciplinary records from Plaintiff's current employer; however, the subpoenas as written are overbroad.

Plaintiff contends that MCCPH's subpoenas duces tecum to Plaintiffs' subsequent employers should be quashed because the records they seek are irrelevant and are, thus, outside the scope of Rule 26. [DN 17-1]. Plaintiff argues that the search for such information amounts to no more than a "fishing expedition…that appears designed only to harass [Plaintiff]." *Id.* at 61. Plaintiff does concede, however, that her earnings post-MCCPH *may* be relevant to her claim for lost wages from the date of termination at MCCPH through the date of trial. *Id.* at 60. Even if that information is relevant, Plaintiff argues that it can and must be obtained through less intrusive means, such as the tax documentation she has produced and intends to produce. *Id.* at 60. [DN 19 at 105-106].

MCCPH claims that its subpoenas seek documents and information that would go directly to mitigation of Plaintiff's lost wage damages; therefore, it contends those documents are relevant and discoverable. Specifically, MCCPH argues that the requested employment records will reveal, or is likely to reveal, information about: Plaintiff's wage or salary; benefits; the regularity or irregularity that Plaintiff worked; periods of idleness and the reasons therefor; changes in status caused by Plaintiff or employer; application dates; and reasons given for separating from MCCPH. [DN 18 at 79]. The Court finds that all of this information, arguably, could contribute to the mitigation analysis for Plaintiff's lost wages claim and is, therefore, relevant. Accordingly, the subpoenas will not be quashed to the extent they seek those documents.

MCCPH also argues that information regarding any disciplinary actions received from Fast Pace, LLC, and the facts surrounding her eventual termination from that company is necessary and relevant because that information goes to the issue of whether MCCPH's back-pay liability exposure should be tolled. *Id.* at 79. This is because "[i]f an employee suffers a 'willful loss of earnings,'…the employer's backpay liability is tolled." *Thurman v. Yellow Freight Sys., Inc.*, 90

6

F.3d 1160, 1168–69 (6th Cir. 1996) (quoting *N.L.R.B. v. Ryder System Inc.,* 983 F.2d 705, 712 (6th Cir.1993)). " [A] discharge from interim employment will toll backpay liability only if the employee's misconduct was 'gross' or 'egregious.' " *Thurman*, 90 F.3d at 1169 (quoting *Ryder System Inc.,* 983 F.2d at 713.

Here, Plaintiff indicated in discovery that she was terminated from Fast Pace, LLC, for "not meeting company goals." [DN 18-2 at 93]. From that alone, it is insufficient to determine the facts surrounding Plaintiff's termination. Plaintiff's Reply provides no further context. In fact, the Reply neither contests nor addresses the potential that backpay liability could be tolled due to Plaintiff's termination from Fast Pace. Instead, Plaintiff simply claims that MCCPH has failed to demonstrate how disciplinary actions are relevant and then accuses MCCPH of seeking such information to embarrass Plaintiff or obtain propensity evidence. [DN 19 at 103]. It is clear to this Court, however, that Plaintiff's disciplinary and termination records from Fast Pace, LLC, could be relevant to determine how Plaintiff failed to meet the company's goals and whether that failure was a result of gross or egregious willful conduct that would toll MCCPH's back-pay liability. Accordingly, MCCPH shall be permitted to subpoena Fast Pace, LLC, for Plaintiff's disciplinary and termination records.

MCCPH has failed, however, to demonstrate, or even discuss, in its Response how Plaintiff's disciplinary records from her *current* employer, Primary Care, would be relevant to any mitigation efforts. Without further information, the Court sees no relevance to those records and sees no purpose in seeking them; therefore, MCCPH shall not be permitted to obtain them.

Finally, MCCPH's two subpoenas include very broad language that essentially would capture any document the employers have on Plaintiff, instead of limiting language that narrows

7

the scope of the subpoenas to the categories of documents enumerated therein.[1] MCCPH has not shown the need for every piece of information the two employers have on Plaintiff and this broad scope could be viewed as a proverbial "fishing expedition." The Court shall limit the scope of the two subpoenas solely to the categories of documents they list.

## CONCLUSION

For the foregoing reasons, Plaintiff Laura Drummond's Motion to Quash, [DN 17], is GRANTED IN PART and DENIED IN PART.

Defendant MCCPH shall be permitted to issue a subpoena for the following documents to Fast Pace, LLC: Application(s) for employment, resume tendered, offer letter, dates of employment, employment position(s) held, job descriptions for position(s) held, work schedule and Full Time Equivalent status, hours worked and compensation by payroll period, benefit enrollment form(s), summary plan descriptions for benefit plans in which she was eligible to participate, employee costs of participating in benefit plans in which she was eligible to participate, change of status confirmations (including termination of employment if applicable), disciplinary records (including employment termination if applicable), leave(s) of absence applied for and action(s) taken in response, any work-related injury or illness reported, IRS form(s) W2 or 1099, and any key or other summary of payroll codes necessary to interpret entries, not otherwise evident, appearing within records pertaining to hours of work and payroll.

Defendant MCCPH will be permitted to issue a subpoena for those same enumerated documents to Primary Care, except for any disciplinary records.

---

[1] Plaintiff's subpoenas seek: All employment records and information created, received, or maintained on [Plaintiff] whether in hard copy or electronic form, including, but not limited to Ms. Drummond's application for employment, the dates of her employment, her complete personnel file, work schedule, time cards, performance evaluations, worker's compensation records, payroll history, job description and duties, rate of pay, resume, manager files, benefit information, W2s or 1099s, disciplinary record and any other employment records which exist. [DN 17-2].

**IT IS SO ORDERED.**

June 11, 2020

Lanny King, Magistrate Judge
United States District Court

c:      Counsel of Record